UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60202-RS

MARTHA ARCE,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Martha Arce's ("Plaintiff") Motion for Summary Judgment and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Defendant") Motion for Summary Judgment [ECF Nos. 8, 12]. These motions were referred to the Undersigned by the Honorable Rodney Smith for a Report and Recommendation. [ECF No. 2]. For the reasons stated below, the Undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

## I.      PROCEDURAL BACKGROUND

Plaintiff appeals the denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff filed the SSI and DIB applications on May

1

26, 2020, alleging an onset date of December 15, 2019. [R. 39].[1] Following the denial of her claim at the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge (the "ALJ"). [R. 36]. Plaintiff's request was granted, and the telephonic hearing was held on February 14, 2022, before ALJ Valencia Jarvis. [*Id.*]. Plaintiff was represented by counsel, and both Plaintiff and a Vocational Expert ("VE") testified at the hearing. [*Id.*]. On May 17, 2022, the ALJ found Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. [R. 36–48]. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. [R. 6]. Plaintiff now seeks judicial review of the ALJ's decision, and both Parties moved for summary judgment. [ECF Nos. 8, 12]. Plaintiff has exhausted her administrative remedies, and the case is ripe for review under 42 U.S.C. § 1383(c).

## II.    <u>STANDARD OF REVIEW</u>

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 F. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

---

[1] All references to "[R. __]" are to the record of the administrative proceeding filed by the Commissioner at ECF No. 6.

So long as the Commissioner's decision is supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* However, this restrictive standard of review applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**B. Regulatory Framework**

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if he is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that he is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether he is currently engaged in substantial gainful activity; (2) whether he has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the

severity of a specified impairment in the Listing of Impairments; (4) whether he can perform his past relevant work despite his impairments; and (5) whether he can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.   THE RECORD

### A. Plaintiff's Testimony

Plaintiff testified that because of an automobile accident in 2019, she was in the hospital for approximately one month and received home health therapy for about four to six weeks. [R. 65–66]. The accident resulted in multiple fractures, including a fracture of the cervical spine and thoracic spine, for which no surgery was performed. [R. 67]. Plaintiff's right leg tibia and fibula were fractured as well, and those fractures had to be corrected by surgery. [*Id.*]. In addition, since the accident, Plaintiff testified she cannot not walk without a walker because she loses her balance and cannot not walk straight. [R. 66]. Plaintiff takes Diclofenac for pain, and due to her fractures, she expressed that during an eight-hour shift, she is limited to standing thirty minutes at most, taking around ten steps before having to sit down. [R.81–82]. She can only sit down for thirty minutes straight, but for a total of two to four hours within a span of eight hours. [*Id.*].

Moreover, Plaintiff testified she has trouble sleeping—for which she takes melatonin—due to the pain and has sleep apnea. [R. 69]. Further, Plaintiff stated that she had gastric sleeve surgery in 2017 from which she lost sixty-four pounds but regained twenty. She currently has gastrointestinal problems and has been diagnosed with diverticulitis for which she takes Dicyclomine. [R.68–71]. Plaintiff explained she had been hospitalized on three occasions for diverticulitis and has flare-ups about every other month lasting approximately two to three days, and is unable to do anything because of the pain. [R. 71]. Nonetheless, Plaintiff noted she had been

diagnosed with diverticulitis in 2013, and she continued working after the diagnosis until 2019. [R. 82–83]. Additionally, she explained that due to diabetes, she experiences neuropathy, which has worsened since the accident and causes numbness and tingling in her legs, toes, arms, hands, face, and tongue. [R. 72]

According to her testimony, Plaintiff has trouble using her hands due to a pinkie finger fracture, drops objects such as cups because she cannot hold them with one hand, and also has difficulty writing. [R. 72–73]. In addition, Plaintiff explained that she has tremors in both her hands and legs, for which she had a neurology appointment. [R. 73]. However, she was not taking any medication for the tremors. [R. 89]. With regard to her mental health symptoms, Plaintiff testified she takes Prozac and Wellbutrin and explained that due to her depression, she feels overwhelmed, has trouble concentrating, cries, and is forgetful. [R. 73, 80].

She testified that her last work was in customer service in December of 2019. [R. 63–64]. As part of her job duties at a distribution center, Plaintiff answered the phones, used a computer, walked and used stairs to get invoices, and interacted with customers. [R. 64–65]. In addition, Plaintiff worked part-time at a fifty-five-plus community where she helped customers and planned parties and events. [R. 78]. With respect to education, Plaintiff has a Bachelor of Science in Administration and, in 2021, she withdrew from a Master's Program in Human Resources because she could not concentrate. [R. 74, 84–85].

As for her daily living activities, Plaintiff testified that she lives with her mother and thirty-six-year-old son, who does most of the household chores. [R. 85, 87]. She stated that her son helps her move around the apartment but that she lays down most of the time. [R. 86]. Plaintiff explained that she could prepare sandwiches and microwave foods independently and bathe herself but had to use a chair while in the shower. [R. 86–87]. Since the accident in 2019, she has not driven and

has used Uber to go to her medical appointments. [R. 87–88]. Plaintiff explained that she does not participate in any social activities and has not dated since 2019. [R. 88].

### B.  Medical Evidence

#### i.      December 2019 and June 2020

After the motor vehicle accident, Plaintiff underwent medical procedures, such as the repair of a complex scalp laceration. [R. 478]. By January 2020, Plaintiff's pain had not subsided, and an MRI of Plaintiff's cervical spine showed multiple edemas and certain multilevel degenerative changes, while an X-ray of the right knee showed degenerative changes. [R. 736–41, 742–43]. Once recovered, Plaintiff received physical therapy, where it was noted that Plaintiff's balance was impaired, and her range of motion was reduced, as well as her lower extremities' strength. [R. 1425–27]. Plaintiff's physical therapy had to be discontinued due to the COVID-19 pandemic, but Plaintiff did not return after the clinic reopened. [R 1417].

In May of 2020, Plaintiff followed up with her doctor, who noted that Plaintiff's wound was healing well and that she had nearly full knee motion range. [R. 547, 1411] A month later, in June of 2020, Plaintiff's neck pain had reduced; thus, her cervical collar was removed. [R. 1407–08, 1410]. Further, although Plaintiff was using a wheelchair, she had normal range of motion in the lower extremities, 5/5 strength in all extremities, and no weakness in the arms or legs. [R. 1409]. Sensation, reflexes, and coordination were intact and normal. [*Id.*]. Plaintiff's doctor stated that she did not need further follow-ups. [R. 1410].

#### ii.     Psychological Consultative Examination

Alejandro J. Arias ("Dr. Arias"), Pys.D., examined Plaintiff in July of 2021. [R. 1699]. Plaintiff reported experiencing back and neck pain, feeling dizzy at times, and losing her balance. [R. 1701]. Moreover, Plaintiff complained of difficulty remembering things and losing her train of

thought, misplacing things, and having problems finding words. [*Id.*]. Regarding her emotional stability, Plaintiff expressed having excessive worry, feeling anxious, depressed, and overwhelmed but denied any suicidal/homicidal thoughts. [*Id.*].

Dr. Arias found Plaintiff was cooperative, motivated, and maintained good eye contact. [*Id.*]. Dr. Arias reported that Plaintiff could not recall the exact day but successfully recalled the month, the year, and the day of the week. In a memory test, she could recall three out of three words upon immediate recall and recited four numbers forward and three backward. [*Id.*]. After five minutes had passed, Plaintiff could remember two out of three words. [*Id.*]. Additionally, she remembered the city where she was born, the high school she attended, and two out of the last four United States presidents. [*Id.*]. Moreover, Plaintiff could find similarities between two objects, decipher select proverbs, and name multiple cities, but she "'lost set' when performing serial subtractions of 7 from 100." [R. 1702]. Her judgment was tested and seemed fair. [*Id.*]. Ultimately, Dr. Arias diagnosed Plaintiff with Unspecified Depressive Disorder with Anxious Distress and Rule Out Neurocognitive Disorder Secondary to Traumatic Brain Injury. [*Id.*]. Dr. Arias reported that Plaintiff would "benefit from supervision in managing personal funds." [*Id.*].

### iii.   Dr. Aurora Luna, M.D.

Dr. Aurora Luna ("Dr. Luna"), M.D., examined Plaintiff on October 9, 2020. [R. 1380]. Dr. Luna reported that Plaintiff was alert, cooperative, and oriented to person, place, and time. [*Id.*]   Examination of the neck, back, chest, heart, and abdomen showed no abnormalities. [R. 1381]. Regarding Plaintiff's extremities, she had a grip strength of 5/5 in both hands and a straight leg raise from zero to ninety degrees in a sitting position bilaterally. [*Id.*]. The neurological exam showed that Plaintiff's cranial nerves II through XII were intact, her motor strength was normal, she was able to perform "slow gait, station, heel to toe, tandem walk and knee squat with moderate

difficulty and needed the walker for heel to toe." [*Id.*]. In addition, Plaintiff could walk slowly without the assistance of a walker but walked better with the walker. [*Id.*]. Considering Plaintiff's age and condition, the orthopedic examination was within normal limits. [R. 1382–86].

Dr. Luna concluded that Plaintiff could perform activities that involve "sitting, lifting, carrying, and handling objects, moving about, hearing, seeing, speaking[,] and traveling." [*Id.*]. Nonetheless, it was Dr. Luna's opinion that Plaintiff would have difficulty walking or standing for prolonged periods of time. [*Id.*]. Because Plaintiff used a walker for better support, Dr. Luna stated Plaintiff had mild gross limitations and determined that:

> [Plaintiff could] lift, push, pull; [] bend, stoop. She would have a hard time with knee squat[ting], kneel[ing], crawl[ing] and crouch[ing]. [Plaintiff could] climb stools/small ladders, if needed, and walk up and down steps with rails. Slow gait with knee pain on ambulation. No major sensory loss for age was appreciated. [Plaintiff] has the ability to hear and understand normal conversational speech. [She] can do work-related mental activities involving common understanding and memory; sustain concentration and persistence, social interaction and adaptation during this limited exam.

[R. 1382].

### iv.    Dr. Bettye Stanley, D.O.

On October 12, 2020, State agency doctor Bettye Stanley ("Dr. Stanley"), D.O., examined Plaintiff. [R. 97]. Dr. Stanley found Plaintiff's LE fractures and spine disorders to be severe but found the depressive, bipolar, and related disorders to be nonsevere. [R. 98]. Regarding Plaintiff's psychiatric evaluation, Dr. Stanley found Plaintiff's abilities to interact with others, understand/remember/apply information, concentrate/persist/maintain pace, and adapt/manage oneself to be mild. [*Id.*]. More specifically, Dr. Stanley noted that Plaintiff could follow instructions, socialize with family members through the phone, independently perform personal care, handle stress and changes in routine well enough, and go to places without reminders. [*Id.*]. Ultimately, Dr. Stanley determined that Plaintiff's impairment was not severe. [*Id.*].

Dr. Stanley determined Plaintiff's residual functional capacity ("RFC) and found Plaintiff had exertional limitations. [R. 99]. Specifically, Dr. Stanley indicated that Plaintiff could occasionally lift/carry up to twenty pounds; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally crouch, kneel, crawl, balance, and stoop. [R. 99–100]. In addition, Dr. Stanley found that Plaintiff was limited to standing and/or walking for six hours out of an eight-hour work shift and sitting for six hours out of an eight-hour shift. [*Id.*]. Dr. Stanley found that Plaintiff had no manipulative, visual, or communicative limitations. [*Id.*].

In addition, Dr. Stanley noted that Plaintiff had environmental limitations. Dr. Stanley stated that Plaintiff could have unlimited exposure to extreme cold, extreme heat, fumes, odors, dust, gases, poor ventilation, humidity, and noise while finding that she should avoid concentrated exposure to vibration and hazards such as machinery and heights. [R. 100–01]. Dr. Stanley noted that Plaintiff could slowly walk without a walker but could walk better with it. [R. 101]. In the end, Dr. Stanley reported that Plaintiff could perform her past relevant work as a sales support coordination as actually performed and found Plaintiff not disabled. [R. 102].

### v. Dr. Pierre-Richard Edouard, M.D.

On July 23, 2021, Dr. Pierre-Richard Edouard ("Dr. Edouard"), M.D., examined Plaintiff. [R. 1703–12]. Dr. Edouard found Plaintiff alert, conscious, coherent, and oriented to person, place, and time. [R. 1709]. Further, Dr. Edouard reported that Plaintiff had no trouble getting on and off the examination table. [*Id.*]. Plaintiff's vision, ears, throat, and nose showed no abnormalities. [R. 1710]. Plaintiff's abdomen was soft and not tender, with no signs of palpable mass or hernia and no organomegaly. [*Id.*] The neck, head, back, and chest exams all showed normal findings. [*Id.*]. Plaintiff's neurological examination was also normal, although she tested positive for Romberg. [*Id.*]. Regarding Plaintiff's extremities: she had a grip strength of 5/5 in both hands and a leg

strength of 3/5 in both legs; pedal pulses were present and equal bilaterally; and she was able to button her shirt and turn the knob to open the door and demonstrated normal fine manipulation. [*Id.*]. Dr. Edouard reported that Plaintiff's gait was abnormal, but she was not using an assistive device, and the supine and seated straight leg raise tests were negative bilaterally at forty degrees. [R. 1711]. Even though Dr. Edouard indicated that Plaintiff could not toe and heel walk, at another point in the examination, he had stated that she could. [R. 1707, 1711]. Dr. Edouard's impressions after the examination were that Plaintiff suffered from head injuries, multiple fractures, chronic fracture deformity in the left knee, and mild osteoarthritic changes of the right and left knee. [R. 1711–12].

### vi.     Steven Arkin, M.D.

On August 4, 2021, State agency doctor Steven Arkin M.D. ("Dr. Arkin") examined Plaintiff and determined Plaintiff had several medically determinable impairments ("MDI"). [R. 115]. Dr. Arkin found Plaintiff's following MDI to be severe: bone fractures, lower limb fractures, upper limb fractures, diabetes mellitus, obesity, and essential hypertension. [*Id.*]. On the other hand, Dr. Arkin determined that the MDIs of depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders were nonsevere. [*Id.*]. In accordance with Dr. Stanley's assessment, Dr. Arkin found Plaintiff's ability to interact with others, understand/remember/apply information, concentrate/persist/maintain pace, and adapt/manage oneself to be mild. [R. 116].

Dr. Arkin found that Plaintiff had the following exertional limitations: occasionally lift/carry up to twenty pounds, frequently lift/carry up to ten pounds, stand/walk for a total of four hours, and sit for about six hours in an eight-hour shift. [R. 117]. In addition, Dr. Arkin noted that Plaintiff had several postural limitations, including only being able to occasionally kneel, crouch, crawl, stoop, balance, climb ramps/stairs, and never climb ladders/ropes/scaffolds. [*Id.*].

Concerning environmental limitations, Dr. Arkin indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, poor ventilation, and hazards such as machinery and heights. On the other hand, Dr. Arkin stated that Plaintiff could have unlimited exposure to vibrations. [R. 117–18].

Additionally, Dr. Arkin further supported Plaintiff's RFC assessment by noting that Plaintiff's back, chest, ears, nose, throat, abdomen, and neurological exams showed normal results. [R. 118]. Plaintiff's vision without glasses was 20/200 in the right eye and 20/90 in the left and pupils were normal. [*Id.*]. When the extremities were examined, Dr. Arkin noted Plaintiff had a grip strength of 5/5 in both hands and a leg strength of 3/5 in both legs, fine motor skills were normal, Plaintiff was able to button her shirt and turn the doorknob, and the pedal pulses were present and equal bilaterally. [*Id.*]. Lastly, Dr. Arkin reported that Plaintiff's "supine and seated straight leg raise tests were negative bilaterally. [Plaintiff] was unable to toe and heel walk. The gait was abnormal. [Plaintiff] was not using any assisting device." [*Id.*]. Ultimately, Dr. Arkin determined that Plaintiff could perform her PRW as actually performed. [R. 119].

## C. Vocational Expert

At the hearing before the ALJ, the Vocational Expert ("VE") testified that Plaintiff's past job as a customer service representative was sedentary and semi-skilled, while Plaintiff's sales support job mostly resembles the job of an administrative clerk, which requires light physical demand and is semi-skilled. [R. 90]. The VE acknowledged that the skills needed to work as an administrative clerk and a customer service representative were not transferable. [R. 92]. As hypothetical 1, the ALJ asked the VE whether an individual with Plaintiff's limitations could perform any of Plaintiff's past jobs. [R. 90–91]. The VE responded that the individual could work as an administrative clerk and customer service representative. [R. 91]. As hypothetical 2, the ALJ

asked whether the VE's opinion would change if the individual could only "stand and walk four hours in an eight-hour day." [*Id.*]. The VE responded that the individual could work as a customer service representative. [*Id.*].

The ALJ then inquired about employer tolerances for workers being off-task. [*Id.*]. The VE responded that "[e]mployers understand that none of us are on task 100% of the time so they allow for being [off-task] about 10%. If an employee is [off-task] more than that on a consistent basis and it erodes the employer's expectation of productivity then the employee will probably be terminated." [R. 91–92]. The ALJ asked the VE about employer tolerances for unexcused/unscheduled absences. [*Id.*]. The VE noted that the industry norm average is "10 to 12 days of absenteeism per year, which equates to approximately one day per month." [*Id.*].

Plaintiff's counsel asked about the transferability of skills, to which the VE responded that there were no transferable skills in the jobs described. [R. 92]. Lastly, counsel asked the VE to clarify that "in responding to the ALJ's hypothetical question [she] did not consider any factors and limitations beyond those specifically listed by the ALJ." [*Id.*]. The VE responded that she did not consider any limitations other than those listed by the ALJ. [*Id.*].

**D. ALJ's Findings**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 15, 2019. [R. 39]. Next, the ALJ found that Plaintiff suffered from hypertension, diabetes mellitus, and obesity; multiple fractures of the cervical and thoracic spine; fractures in the tibia, right finger, the right first rib, and the left tibia plateau with meniscal tear status post repair; and scalp lacerations—severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). [R. 39]. Her other impairments of diverticulitis, sleep apnea, and neuropathy caused

no more than minimal limitations to her ability to perform basic work activities and were, therefore, not severe. [*Id.*].

The ALJ also found that, according to the State agency psychological consultants, Plaintiff's mental health conditions were "non-severe." [R. 41]. The ALJ found their findings and assessments to be persuasive as they were consistent with and supported by the medical record. Further, the ALJ noted Plaintiff's psychological consultative examination with Dr. Arias. [R. 40]. During that examination, although Plaintiff's mood was depressed, Plaintiff showed motivation and cooperation, reported being independent with daily activities, and maintained good eye contact. [*Id.*]. Further, Plaintiff could enumerate four numbers forward and three backward and could remember three out of three words immediately and two out of three after a delay. [*Id.*]. Dr. Arias diagnosed Plaintiff with Unspecified Depressive Disorder with Anxious Distress and Rule Out Neurocognitive Disorder Secondary to Traumatic Brain Injury. [*Id.*]. The ALJ found the disorders Dr. Arias diagnosed (along with Plaintiff's other mental impairments of anxiety and major depressive disorder) caused no more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore non-severe. [R. 39–40]. She was able to perform self-care and some chores, interact appropriately with the consultative examiners that she had not known previously, apply for a master's degree program, and her grooming and hygiene were "largely intact." [*Id.*].

Further, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in the Commissioner's Listings. [R. 41].

The ALJ concluded, however, that Plaintiff retained the residual functional capacity (the "RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b) subject to certain limitations. [R. 41]. Plaintiff, for instance, could frequently lift and/or carry ten pounds, occasionally carry and/or lift twenty pounds, kneel, crouch, stoop, crawl, balance, and climb ramps and stairs; she could never climb ladders or scaffolds. [*Id.*]. Plaintiff could tolerate occasional exposure to extreme temperatures, wetness, humidity, noise, fumes, odors, dust, gases, poor ventilation, unprotected heights, and dangerous moving machinery. [R. 41–42]. In addition, the ALJ found that in an eight-hour work shift, Plaintiff could sit for six hours and stand and/or walk for six hours. [R. 41]. The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other record evidence. [R. 43].

The ALJ noted the conclusions of State agency medical consultant Dr. Stanley, who completed an assessment in October of 2020. [R. 46]. She explained that Dr. Stanley's assessment was partially persuasive and generally consistent with and supported by the medical record. [*Id.*]. Specifically, the ALJ stated that:

> Although some notes indicated reduced strength in the lower extremities, generally, her neurological status was intact, which supported the ability to stand and walk for six hours in an 8 hour workday. Examinations reflected reduced ranges of motion for the cervical and lumbar spine as well as other joints, thus a reduction in exertional level and postural limitations were both supported. Environmental limitations were supported due to the claimant's history of respiratory issues regarding Covid, and so as not to exacerbate symptoms. Further, the claimant's orthopedic conditions, complaints of pain, and obesity may make navigating hazards and the environment difficult. Evidence submitted after her assessment, however, supported greater limitations, and thus Dr. Stanley's opinion was only partially persuasive.

[*Id.*].

Additionally, the ALJ acknowledged the consultative examination of Plaintiff conducted by Dr. Edouard in July of 2021. [R. 45]. She noted that Dr. Edouard reported that Plaintiff had

tenderness in the lumbar spine and was unable to toe and heel walk. Nonetheless, later in his report, Dr. Edouard indicated Plaintiff was able to toe and heel walk and indicated that Plaintiff's gait was abnormal, but he also pointed out that Plaintiff was not using an assistive device. [*Id.*]. Dr. Edouard diagnosed Plaintiff with head injuries and multiple fractures. [*Id.*].

The ALJ explained that the assessment conducted in August of 2021 by Dr. Arkin was consistent with and supported by the medical record and, thus, very persuasive. [R. 46]. The ALJ stated that:

> As noted above, [Plaintiff's] symptoms, obesity, and objective findings supported reductions with the exertional level and supported postural limitations. Ranges of motion were limited for the cervical and lumbar spine, and other joints. This supported more restrictive limitations that what Dr. Stanley had determined. Further, so as not to exacerbate symptoms, additional environmental limitations were provided such as limiting the claimant's exposure to extreme temperatures. The claimant had been hospitalized due to shortness of breath related to Covid. Diminished breath sounds were appreciated, and thus, limitations for pulmonary irritants were included in the residual functional capacity.

[*Id.*]. However, the ALJ rejected Dr. Arkin's finding that Plaintiff could only stand and walk for four hours instead of six because "[r]ecent records and examinations indicated neurological status was functional and largely intact[,] [b]alance was intact and musculoskeletal findings were generally normal." [*Id.*].

Finally, the ALJ explained Plaintiff's consultative examination in October of 2020 performed by Dr. Luna. [R. 44, 46–47]. The ALJ noted that Dr. Luna found that Plaintiff could perform activities "involving sitting, lifting, carrying and handling objects, moving about, hearing, seeing, speaking, and traveling. [R. 46]. She acknowledged Dr. Luna's findings that Plaintiff would have difficulty "standing or walking for longer periods of time since she used a walker for support due to mild imbalance and knee pain. Dr. Luna stated . . . that [Plaintiff] was able to ambulate without the walker, although she had more support with it." [R. 46–47]. In addition, the

ALJ stated that Dr. Luna indicated the Plaintiff "could lift, push, pull, bend, and stoop, but that she would have a hard time with knee squat, kneel, crawl and crouch. [Dr. Luna] commented [Plaintiff] could climb stools/small ladders, if needed, and walk up and down steps with rails."

The ALJ found Dr. Luna's opinions were generally persuasive since they were generally consistent with the medical record and supported by her examination, even though she did not provide a function-by-function assessment. [R. 44, 47]. The ALJ explained that the opinion was generally persuasive because Plaintiff's neurological status, "with few exceptions, was generally intact. Light-level work, postural limitations, and environmental restrictions were supported as discussed with the opinions of Drs. Stanley and Arkin. While [Plaintiff] had positive findings on objective tests and examinations, mostly, [Plaintiff's] neurological status was functional and intact. Recent notes reflected normal musculoskeletal findings."

Fourth, the ALJ found that Plaintiff could perform her prior work as a customer service representative and administrative clerk. [R. 47]. The ALJ concluded that "[g]iven the abovementioned [RFC], the vocational expert testified the [Plaintiff] would be able to perform her past relevant work." [*Id.*]. Further, the ALJ stated that "[i]n comparing the [Plaintiff's RFC] with the physical and mental demands of [Plaintiff's past relevant] work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed." [*Id.*]. Ultimately, the ALJ found Plaintiff was not disabled as defined in the Social Security Act from December 15, 2019, through the decision date. [*Id.*].

## IV.   DISCUSSION

The RFC is the ALJ's assessment, based on all relevant evidence, of a claimant's ability to work despite his or her impairments. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). "Error arises only when the ALJ rejects medical evidence from the RFC 'without (at least) providing a

good reason for doing so.'" *Felker v. Comm'r of Soc. Sec.*, No. 2:22-CV-221-KCD, 2023 WL 2986246, at *5 (M.D. Fla. Apr. 18, 2023) (quoting *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-1453-ORL-TBS, 2015 WL 1268257, at *7 (M.D. Fla. Mar. 19, 2015)). "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1985). In addition, "[t]he ALJ is not required to specifically discuss each piece of evidence so long as the decision shows that [s]he considered the claimant's condition as a whole." *Robinson v. Kijakazi*, No. 21-21603-CIV, 2022 WL 18155656, at *2 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (quoting *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 824 (11th Cir. 2021)). Plaintiff raises three arguments for why the case should be remanded. [*See generally* ECF No. 8]. Each argument is addressed in turn.

    A.   <u>Ground 1: Remand Is Required Because The ALJ Failed To Accept And Include Or Reject And Explain Why Plaintiff Was Not Including In The RFC Determination Functional Limitations Described By Medical Sources Whose Opinions She Deemed Persuasive</u>

First, Plaintiff argues that the ALJ failed to either accept and include or reject and explain why she did not include in the RFC determination the limitations found by the doctors' opinions that she found persuasive. [ECF No. 8 at 3]. Plaintiff, for instance, points to Dr. Luna's consultative examination in 2020 and Dr. Arkin's opinion. [*Id.* at 4, 5]. Plaintiff argues the ALJ failed to include Dr. Luna's opinion in the RFC limitation that Plaintiff would have difficulty standing or walking for long periods. [*Id.* at 5]. In addition, Plaintiff contends that the ALJ did not include in the RFC the limitation Dr. Arkin reported that Plaintiff should avoid occasional noise exposure. [*Id.* at 6].

Defendant responds that there is "substantial evidence supporting the ALJ's evaluation of Dr. Luna's opinion." [ECF No. 12 at 8]. In addition, Defendant states that "contrary to Plaintiff's

arguments, the ALJ included Dr. Arkin's opined limitations, included the reduction of Plaintiff's exposure to 'occasional' noise." [*Id.*]. Defendant also argues that the ALJ is not required to address every limitation identified by a medical source and that finding a medical opinion persuasive does not mean that the opinion is controlling with respect to the RFC determination. [*Id.* at 9]. The ALJ's decision, Defendant asserts, should be affirmed because it is supported by substantial evidence. [*Id.* at 14]. On the other hand, Plaintiff argues in her reply brief that "an ALJ may not reject limitations described in a persuasive medical source. An ALJ must explain what limitations she has adopted or rejected and why." [ECF No. 14 at 1].

Defendant is correct. Plaintiff applied for benefits after March 27, 2017. Therefore, the ALJ applied a new set of regulations for evaluating medical opinions and prior administrative medical findings, as set forth in 20 C.F.R. § 416.920c:"The new regulations characterize evidence from Federal and State agency medical and psychological consultants as 'prior administrative medical findings,' instead of as medical opinions." *Mesa v. Kijakazi*, No. 21-20424-CIV-SCOLA/GOODMAN, 2022 U.S. Dist. LEXIS 171476, at *37 (S.D. Fla. May 11, 2022) (quoting 20 C.F.R. § 416.913(a)(5)). Under the new regulations, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). "In evaluating medical opinions and prior administrative medical findings, the [Social Security Administration] considers several factors, prioritizing (c)(1), supportability, and (c)(2), consistency, when assessing the persuasiveness of any given medical opinion." *Mesa*, 2022 U.S. Dist. LEXIS 171476, at *37–38 (citing 20 C.F.R. § 416.920c(a)).

Regarding Dr. Luna, the ALJ found her opinion to be "generally persuasive as they were generally consistent with the medical record and supported by her examination." [R. 47]. The ALJ

also found Dr. Arkin's "opinion [to be] more consistent with, and supported by, the medical evidence of the record, and thus [] very persuasive." [R. 46]. The ALJ is not required to adopt every limitation described by a medical opinion she finds persuasive. *See Mesa*, 2022 U.S. Dist. LEXIS 171476, at *40 ("An ALJ is not required to adopt every finding made by a doctor whose opinion is found to have any modicum of persuasiveness."); *Watson v. Kijakazi*, No. 21-CV-60516-RUIZ/STRAUSS, 2022 U.S. Dist. LEXIS 95024, at *15 (S.D. Fla. May 3, 2022) (quoting *League v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 U.S. Dist. LEXIS 42037, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7, 2022), report and recommendation adopted, 2022 U.S. Dist. LEXIS 41962, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022)) ("At any rate, 'the regulations do not require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive.'").

In addition, although the ALJ did not explicitly reject Plaintiff's difficulty to stand/walk for extended periods of time identified by Dr. Luna or the limitation found by Dr. Arkin that Plaintiff avoid occasional exposure to noise, the ALJ is not required to do so. *See Mena v. Kilolo Kijakazi Acting Comm'r of Soc. SEC*, No. 1:22-cv-24098 SCOLA/GOODMAN, 2023 U.S. Dist. LEXIS 228532, at *14-15 (S.D. Fla. Nov. 17, 2023) (striking down plaintiff's implication that if the ALJ found a medical opinion to be persuasive but either disagrees with or rejects "certain parts of that opinion, then the ALJ is required to discuss it in her rationale." The court determined that "[p]laintiff's position [was] void of any supporting caselaw and [was] seemingly based on attorney rhetoric.").

Here, the ALJ followed the regulations and articulated the consistency and supportability of the medical opinions in finding them less than fully persuasive. Moreover, there is substantial evidence supporting the ALJ's findings. The ALJ, for example, explicitly rejected Dr. Arkin's

finding that Plaintiff was limited to walking for four hours instead of six based on recent records and examinations, which indicated that balance was intact and musculoskeletal findings were generally normal. [R. 47]. In addition, when discussing Dr. Luna's opinion, the ALJ also stated that "recent notes reflected normal musculoskeletal findings." [R. 48]. Further, the ALJ found Dr. Stanley's findings regarding environmental limitations to be supported by the record. In his assessment, Dr. Stanley had indicated that Plaintiff could have unlimited exposure to noise. [*See* R. 47; *see also* R. 100–01].

Therefore, because the ALJ properly explained why she considered these two doctors' opinions to be less than fully persuasive and because her decision is otherwise supported by substantial evidence, there is no basis for remand on this ground.

B.  <u>Ground 2: Remand Is Required Because The ALJ Failed To Consider The Medical Necessity Of Plaintiff's Use Of A Walker And Include It In The RFC Determination</u>

Second, Plaintiff argues that the ALJ failed to explain why "the use of a walker was not included in the RFC determination" even though the "ALJ noted several times that [Plaintiff] used a walker to assist with ambulation." [ECF No. 8 at 9]. More specifically, Plaintiff states that "there is a material inconsistency in the evidence of record as to whether [Plaintiff's] use of a walker was medically necessary." [*Id.* at 10]. Therefore, Plaintiff contends that in accordance with Agency policy, "the ALJ was required to explain why [the use of the walker] was not found medically necessary and [that] her failure to do so violated SSR 96-8p, 1996 WL 374184." [*Id.*].

On the other hand, Defendant responds that "the ALJ's RFC discussion thoroughly discussed Plaintiff's use of [a] walker but determined that Plaintiff could mostly ambulate effectively without one." [ECF No. 12 at 11] (internal citations omitted). In addition, Defendant points to Dr. Luna's opinion stating that Plaintiff could ambulate without the walker and to Dr. Edouard's findings, which indicated that Plaintiff could not ambulate without a walker but a month

later found that Plaintiff had no issues with walking. [*Id.*]. Defendant also notes that "Plaintiff's citation of SSA 96-8p, as that SSA Ruling specifically addresses the use of a walker/cane when Plaintiff is at the sedentary exertional level." [*Id.*]. The ALJ's decision, Defendant asserts, should be affirmed because it is supported by substantial evidence. [*Id.* at 12]. Alternatively, Plaintiff argues in her reply brief that contrary to Defendant's argument, "the ALJ cited evidence related to [Plaintiff's] use of a walker, but she made no explicit finding as to the medical necessity of the walker.. . . Thus, [r]emand is required to consider the 'particular facts' of this case[.]" [ECF No. 14 at 3].

"The use of a hand-held assistive device, such as a walker, is a functional limitation only if it is medically required." *Ann B. v. Comm'r*, No. 4:21-CV-00057-WEJ, 2022 U.S. Dist. LEXIS 202240, at *7 (N.D. Ga. Apr. 28, 2022). To find a hand-held assistive device "medically necessary, medical documentation must 'establish[] the need for a hand-held assistive device to aid in walking or standing, and describ[e] the circumstances for which it is needed (i.e., all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" *Young v. Comm'r of Soc. Sec.*, No. 3:22-cv-307-DNF, 2023 U.S. Dist. LEXIS 76513, at *20–21 (M.D. Fla. May 2, 2023) (quoting SSR 96-9p, 1996 SSR LEXIS 6, 1996 WL 374185, *7 (1996)). "Further, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-GKS-PRL, 2018 U.S. Dist. LEXIS 147254, at *9 (M.D. Fla. July 9, 2018) (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir.2009). However, if "the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject [it], if appropriate, so the reviewing [c]ourt can be sure whether he intended to recognize use of a cane." *Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 U.S. Dist.

LEXIS 55969, at *9 (M.D. Fla. Mar. 31, 2020) (quoting *Ebenroth v. Saul*, 2020 U.S. Dist. LEXIS 21457, 2020 WL 583057, at *7 (S.D. Ga. Jan. 14, 2020)).

Defendant is correct. Although the medical record has evidence of Plaintiff's use of a walker, it also has evidence that Plaintiff can walk and perform her PRW without the assistance of a walker. For instance, Dr. Arkin—whose opinion the ALJ found very persuasive—reported Plaintiff's gait was abnormal and that she was not using any assisting device, stating that Plaintiff could perform her past job as a Sales Support Coordinator. [R. 110–11]. In addition, in his partially persuasive opinion, Dr. Stanley observed that Plaintiff could slowly walk without a walker but that she walked better with the walker. [R. 101]. Like Dr. Arkin, Dr. Stanley concluded that Plaintiff was not disabled and could perform her PRW. Moreover, Dr. Luna's assessment reflects that Plaintiff could ambulate without the assistance of a walker but had better support if she used it. [R. 1382]. Lastly, the ALJ stated that "[Plaintiff] had testified she used a walker due to balance problems, yet in recent progress notes, there were no issues noted with balance. Balance and gait were characterized as normal." [R. 45] (internal citations omitted). Although not explicitly stated, it is evident in her opinion that the ALJ found that Plaintiff's use of a walker was not medically necessary. *See Vachon v. Comm'r of Soc. Sec.*, No. 6:20-cv-1521-MRM, 2022 U.S. Dist. LEXIS 27174, at *22 (M.D. Fla. Feb. 15, 2022) ("Although the ALJ did not explicitly use the phrase 'medical necessity,' it is clear that she considered the medical documentation establishing Plaintiff's need for an assistive device and expressly rejected it in the portions of the ALJ's decision addressed above.").

Therefore, the Court finds that substantial evidence supports the ALJ's consideration of any medical opinion that Plaintiff requires an assistive device. Accordingly, the Court recommends affirming this issue.

C.  Ground 3: Remand Is Required Because the ALJ Improperly Found that Plaintiff Could Return To Her Past Relevant Work In Violation Of Agency Policy

Lastly, Plaintiff argues that the ALJ's finding that Plaintiff could perform her PRW directly contradicts the limitations the ALJ included in the RFC. [ECF No. 8 at 11]. Plaintiff points to the testimony of the VE, who, after being presented with a hypothetical depicting an individual with the same RFC as Plaintiff and similar in age, education, and work experience, determined that said individual could work as a customer representative and as an administrative clerk. [*Id.*]. In the Dictionary of Occupational Titles ("DOT"), both occupations, as Plaintiff states, require exposure to moderate noise levels, which, according to Plaintiff, is in direct conflict with the limitation that the ALJ included in the RFC of occasional exposure to noise. [*Id.* at 11–12].

In the alternative, Defendant argues that Plaintiff is mistaken in her reading of the two occupations' DOT description because moderate noise describes the level of noise Plaintiff would be exposed to and not how frequently Plaintiff would be exposed to the noise. [ECF No. 12 at 13]. Thus, Defendant asserts that "the ALJ RFC limitation of 'occasional' exposure does not conflict with the DOT description of [Plaintiff's PRW]." [*Id.*]. Ultimately, Defendant states that the ALJ's findings are supported by substantial evidence and Plaintiff failed to meet her burden. [*Id.* at 13–14]. Conversely, Plaintiff argues in her reply brief that due to the ALJ failing to make a finding regarding the loudness of the noise Plaintiff could be exposed to, it is unclear whether Plaintiff could perform her past relevant work. Thus, Plaintiff asserts, remand is proper. [ECF No. 14 at 4–5].

The Undersigned agrees with Defendant. "The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five." *Bright v. Kijakazi*, No. 21-60106-CIV, 2021 U.S. Dist. LEXIS 237775, at *22 (S.D. Fla. Nov. 23, 2021). Here, the ALJ determined

that Plaintiff could perform her PRW as a customer service representative and administrative clerk despite Plaintiff's RFC. [R. 47]. As Plaintiff noted, the customer service representative job, DOT § 249.362-014, and the administrative clerk job, DOT § 219.362-010, are described as having a moderate noise level. The ALJ had determined in the RFC limitations that Plaintiff could only be occasionally exposed to noise. [R. 41–42]. However, the ALJ's finding that Plaintiff could perform a job with a moderate noise level while only having occasional exposure to noise is supported by substantial evidence.

Both Dr. Stanley and Dr. Arkin examined Plaintiff and determined that she could perform her PRW. [R. 102, 119]. Notably, Dr. Arkin stated that Plaintiff should avoid noise exposure. [R. 117–18]. And even though the ALJ did not adopt that limitation in her RFC determination, Dr. Arkin found that Plaintiff could perform her past relevant work, and thus she can do so while being limited to only occasional noise exposure. In addition, the ALJ's decision is further supported by the VE's testimony. The VE was presented with two hypothetical scenarios that described an individual similar in age, education, and work experience as Plaintiff and, as part of the limitations, could only be occasionally exposed to noise. [R. 90–91]. It was the VE's opinion that both of Plaintiff's past relevant jobs could be performed by an individual with Plaintiff's noise limitation. [R. 91].

Because the ALJ determination that Plaintiff could perform a moderate noise level job while having a limitation of occasional noise exposure is supported by substantial evidence, the Court finds that there is no conflict between the two.

## **CONCLUSION**

In conclusion, there is substantial evidentiary support for the ALJ's RFC evaluation and determination that Plaintiff can perform her PRW. It is therefore **RECOMMENDED** that

Plaintiff's Motion for Summary Judgment [ECF No. 8] be **DENIED**, the Defendant's Motion for Summary Judgment [ECF No. 12] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

Objections to this Report may be filed with the district judge within TEN days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 15th day of February, 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:     **All Counsel of Record**